1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHARLES KOLLER,

                    Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                Defendant.

Case No. 3:13-cv-05330-RBL-KLS

REPORT AND RECOMMENDATION

Noted for February 28, 2014

Plaintiff has brought this matter for judicial review of defendant's denial of his

application for disability insurance benefits ("DIB").  This matter has been referred to the

undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4)

and as authorized by Mathews, Sec'y of H.E.W. v. Weber, 423 U.S. 261 (1976).  After

reviewing the parties' briefs and the remaining record, the undersigned submits the following

Report and Recommendation for the Court's review, recommending that for the reasons set forth

below, defendant's decision to deny benefits should be reversed and this matter should be

remanded for additional proceedings.

FACTUAL AND PROCEDURAL HISTORY

On May 28, 2009, plaintiff filed a DIB application, alleging disability as of November

25, 1998, due to cervical thoracic lumbar sprain, coronary artery disease, high blood pressure,

and depression. See Administrative Record ("AR") 194-95, 212.  His application was denied

upon initial administrative review and on reconsideration. See AR 98-100, 102-03.  A hearing

REPORT AND RECOMMENDATION - 1

was held before an administrative law judge ("ALJ") on September 1, 2011, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 37-94.

On October 4, 2011, the ALJ issued a decision finding plaintiff disabled between November 25, 1998, through August 27, 2002, but not disabled from August 28, 2002, through his date last insured ("DLI"), December 31, 2003. See AR 18-30. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on February 27, 2013, making the ALJ's decision defendant's final decision. See AR 1-5; see also 20 C.F.R. § 404.981, § 416.1481. On April 30, 2013, Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF # 1. The administrative record was filed with the Court on July 5, 2013. See ECF ## 9-11. The parties have completed their briefing, and thus this matter is now ripe for judicial review and a decision by the Court.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for additional proceedings, because the ALJ erred: (1) in evaluating his mental limitations at step two; (2) in discounting his credibility; (3) in assessing the medical evidence; and (4) in finding him to be capable of performing other jobs existing in significant numbers in the national economy. The undersigned agrees the ALJ erred in finding plaintiff to be not disabled and recommends that the decision be reversed and this matter remanded for further administrative proceedings.

<u>DISCUSSION</u>

The determination of the Commissioner of Social Security (the "Commissioner") that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v.

REPORT AND RECOMMENDATION - 2

1   Comm'r of Social Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772

2   F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will,

3   nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence

4   and making the decision.") (citing Brawner v. Sec'y of Health and Human Servs., 839 F.2d 432,

5   433 (9th Cir. 1987)).

6       Substantial evidence is "such relevant evidence as a reasonable mind might accept as

7   adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation

8   omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if

9   supported by inferences reasonably drawn from the record."). "The substantial evidence test

10  requires that the reviewing court determine" whether the Commissioner's decision is "supported

11  by more than a scintilla of evidence, although less than a preponderance of the evidence is

12  required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence

13  admits of more than one rational interpretation," the Commissioner's decision must be upheld.

14  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence

15  sufficient to support either outcome, we must affirm the decision actually made.") (quoting

16  Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

17  I.      The ALJ's Step Two Determination

18          Plaintiff argues that the ALJ erred in failing to fully evaluate his mental impairments at

19

20

21

22

23  _____

    [1] As the Ninth Circuit has further explained:

24          . . . It is immaterial that the evidence in a case would permit a different conclusion than that
            which the [Commissioner] reached.  If the [Commissioner]'s findings are supported by
25          substantial evidence, the courts are required to accept them.  It is the function of the
            [Commissioner], and not the court's to resolve conflicts in the evidence.  While the court may
26          not try the case de novo, neither may it abdicate its traditional function of review.  It must
            scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are
            rational.  If they are . . . they must be upheld.

    Sorenson, 514 F.2d at 1119 n.10.

    REPORT AND RECOMMENDATION - 3

step two, by refusing to review any evidence generated after his DLI.

A.  Legal Standards at Step Two

An ALJ employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  At step two of the evaluation process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 404.1520, § 416.920.  An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(iii), (c), § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1.  An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." SSR 85-28, 1985 WL 56856, at *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988).  A claimant has the burden of proving that his "impairments or their symptoms affect his ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998).

B.  The ALJ's Step-Two Findings as to Mental Impairments

In this case, the ALJ indicated that he found any mental impairment to be not medically determinable due to the lack of "objective evidence substantiating diagnoses of a mental health impairment . . . before the [DLI]."  AR 24.  Plaintiff argues that the ALJ should have considered post-DLI evidence to infer that his mental conditions existed pre-DLI.  ECF # 12 at 15.  It is true that many medical opinions are rendered retrospectively, and that therefore an ALJ should not confine review to pre-DLI evidence to determine whether a pre-DLI condition exists.  See Lester

v. Chater, 81 F.3d 821, 832 (9th Cir. 1996) ("'[M]edical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition.'" (quoting Smith v. Bowen, 849 F.2d 1222, 1225 (9th Cir. 1988))).   But post-DLI evidence is only relevant to establishing the existence of a pre-DLI condition so long as it suggests that the condition did, in fact, exist pre-DLI.  See, e.g., Capobres v. Astrue, Case No. 09-682-REB, 2011 WL 1114256, at *5 (Mar. 25, 2011) (indicating that although post-DLI evidence cannot be discounted simply because it was created post-DLI, it can be discounted if it does not address a claimant's limitations during the relevant period).

Plaintiff points to multiple mental evaluations performed in 2004 and 2005 that contain diagnoses and provisional diagnoses, and some objective testing results as well, most of which explicitly assess plaintiff's current mental impairments. AR 375-82.  But one of the evaluations (dated approximately one year after plaintiff's DLI) suggests that plaintiff's psychological test results are "consistent with an individual with long-standing character disorder," which implies potential retroactive application.  AR 378.  This evidence should have been considered by the ALJ to determine whether plaintiff had mental limitations during the relevant period, and the ALJ's failure to address this evidence prejudiced plaintiff.

The Commissioner relies on Sam v. Astrue, 550 F.3d 808 (9th Cir. 2008), as an example of the Ninth Circuit's guidance on "this precise issue", rejecting "an argument almost identical to Plaintiff's."  ECF # 13 at 15.  Sam is distinguishable, however.  In Sam, the ALJ looked to both pre-DLI and post-DLI evidence to determine that the claimant did not have any severe impairment before his DLI.  550 F.3d at 809-810.  The ALJ did find that the claimant had a medically determinable impairment — degenerative changes of the cervical spine — post-DLI, but indicated that the claimant was nonetheless not disabled through the date of the decision.

REPORT AND RECOMMENDATION - 5

550 F.3d at 810.  The claimant argued on appeal that the ALJ should have consulted a medical expert to assist in determining an onset date of disability, and the Ninth Circuit rejected that argument because the ALJ had found the claimant not disabled at any time and therefore there was no "onset of disability" to determine.  550 F.3d at 811.

The ALJ in <u>Sam</u> considered the entire medical record, and the claimant in <u>Sam</u> raised a different challenge to the ALJ's decision than the issue raised here.  In this case, plaintiff alleges that the ALJ erred in failing to consider post-DLI evidence to evaluate pre-DLI conditions. Because the ALJ's decision suggests that he did not consider the entire record, but looked only to whether mental-health diagnoses existed in the pre-DLI evidence, the ALJ erred and must reconsider his findings regarding plaintiff's mental impairments in light of the entire medical record on remand.

II.      The ALJ's Assessment of Plaintiff's Credibility

Plaintiff challenges the ALJ's adverse credibility determination, arguing that none of the reasons provided are clear and convincing.

A.      Legal Standards

Questions of credibility are solely within the control of the ALJ. <u>See</u> <u>Sample</u>, 694 F.2d at 642.  The Court should not "second-guess" this credibility determination. <u>Allen</u>, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. <u>See</u> <u>id.</u> at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. <u>Tonapetyan</u>, 242 F.3d at 1148.

REPORT AND RECOMMENDATION - 6

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834.  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284.  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

B.    The ALJ's Credibility Determination

The ALJ found plaintiff to be credible during the period he found him disabled.  AR 25 ("After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are generally credible from November 25, 1998 through August 27, 2002.").  As to the period where the ALJ found plaintiff not disabled, however, the ALJ found that he was not credible due to lack of corroborating medical evidence and evidence of "nonorganic findings and symptom magnification[.]"  AR 28.

Plaintiff concedes that evidence of "nonorganic findings and symptom magnification" exists in the record, but notes that this evidence dates to the time period during which the ALJ found plaintiff disabled and credible, and thus could not support the ALJ's adverse credibility

REPORT AND RECOMMENDATION - 7

determination during the period he was found not disabled.  ECF # 14 at 6.  The Commissioner

contends that because the ALJ did not find plaintiff "to be a reliable witness" during the period

in which he was found disabled, the ALJ's credibility findings are not inconsistent.  ECF # 13 at

7.  The Commissioner's argument overlooks that the ALJ explicitly found plaintiff's allegations

to be credible during the period of disability (AR 25 (". . . [T]he claimant's statements

concerning the intensity, persistence and limiting effects of these symptoms are generally

credible from November 25, 1998 through August 27, 2002.")).  Because the ALJ found plaintiff

to be credible during the period of disability, but then cited evidence dating to that period as

support for his finding that plaintiff lacked credibility during a later period, the ALJ's credibility

findings are internally inconsistent.

     The remaining reason supporting the ALJ's adverse credibility determination is lack of

corroboration in the medical evidence.  AR 28.  This reason alone cannot support an adverse

credibility determination.  See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) ("While

subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated

by objective medical evidence, the medical evidence is still a relevant factor in determining the

severity of the claimant's pain and its disabling effects.").  Thus, on remand the ALJ shall

reconsider plaintiff's credibility during the relevant period.


III.     The ALJ's Evaluation of the Medical Evidence in the Record

     Plaintiff argues that the ALJ erred in assigning controlling weight to the opinion of

treating doctor Peter Ciani, M.D., and in finding that opinion to be inconsistent medical evidence

that undermined plaintiff's credibility.

     A.     Legal Standards

REPORT AND RECOMMENDATION - 8

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Comm'r of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester, 81 F.3d at 830. Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and

REPORT AND RECOMMENDATION - 9

inadequately supported by clinical findings" or "by the record as a whole." <u>Batson</u>, 359 F.3d at 1195; <u>see</u> <u>also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan</u>, 242 F.3d at 1149.  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

B.      Dr. Ciani's Opinion

Dr. Ciani treated plaintiff between 2000 and 2005, and completed a checkbox opinion form in August 2004 indicating that plaintiff can lift/carry up to 24 pounds frequently and 34 pounds occasionally, that he could sit/stand/walk up to four hours each during an eight-hour workday, and that he could alternate between sitting and standing for up to eight hours in an eight-hour workday.  AR 401-02.  Dr. Ciani opined that plaintiff could not return to his former job, but that he could return to other work.  AR 402.  Dr. Ciani completed the same form again in January 2005, indicating that plaintiff could perform light work with similar (though not identical) limitations.  AR 405-06.

The ALJ gave controlling weight to Dr. Ciani's opinions because they were written by a treating physician, are well-supported by the longitudinal record and treatment notes, and were rendered in the context of assessing plaintiff's ability to work.  AR 28.  The ALJ also indicated that he discounted the State agency opinion, which found plaintiff to be more limited than Dr. Ciani, because it was inconsistent with Dr. Ciani's opinions.  AR 29.

Plaintiff argues that (1) that the ALJ erred in giving controlling weight to Dr. Ciani's opinions because it is a checkbox form without explanation, because the record does not contain Dr. Ciani's treatment notes as corroboration, and because the 2004 and 2005 opinions are

1   inconsistent with each other, and (2) the ALJ essentially gave no reason for weighing Dr. Ciani's

2   opinions more heavily than the State agency consultant's.  As to plaintiff's first argument, he

3   cites no authority for the proposition that a checkbox form cannot be assigned controlling

4   weight, and the undersigned is not aware of any.  Plaintiff cites Bell-Shier v. Astrue, 312 Fed.

5   Appx. 45 n.3 (9th Cir. 2009) (citing Crane v. Shalala, 76 F.d 251, 253 (9th Cir. 1996)), for the

6   proposition that checkbox form opinions are not entitled to significant weight.  In neither Bell-

7   Shier nor Crane did the court identify the author of the checkbox opinion as a treating physician,

8   and in both of those cases the ALJ discounted the checkbox opinions rather than assigning them

9   controlling weight.  Neither case stands for the proposition that a treating physician's checkbox

10  opinion cannot be assigned controlling weight, assuming it is supported by the record and not

11  inconsistent with other substantial evidence.  Plaintiff further argues that Dr. Ciani's form

12  opinions are not "substantial evidence."  ECF # 14 at 2.  This argument is rejected because Dr.

13  Ciani's opinions are certainly "more than a scintilla," and adequately support the ALJ's

14  conclusion that plaintiff is capable of light work.  See Magallanes, 881 F.2d at 749 (defining

15  "substantial evidence").

16        The ALJ also indicated that Dr. Ciani's opinion "was well supported by the longitudinal

17  record and numerous treatment notes." (AR 28).  Plaintiff correctly observes that Dr. Ciani's

18  treatment notes are not included in the record, but the ALJ did not specify that the corroborating

19  treatment notes were written by Dr. Ciani.  Indeed, the record contains many treatment notes

20  written by providers who sent their notes to Dr. Ciani.   As plaintiff's "attending physician" (AR

21  389) related to his L&I claim, Dr. Ciani referred plaintiff to many other providers, and was

22  aware of the treatment plaintiff received and his condition as a result.  See AR 315-21, 363-67,

23  375-86, 407-08.

REPORT AND RECOMMENDATION - 11

Plaintiff also suggests that Dr. Ciani's 2004 opinion is inconsistent with his 2005 opinion, which indicated that plaintiff could work at sit/stand/walk for most of the same time limits expressed in the 2004 opinion, but "with rests." AR 405-06.  In both opinions, however, Dr. Ciani found plaintiff capable of performing light work on a full-time basis.  Compare 401-02 with 405-06.  Although plaintiff suggests that Dr. Ciani's 2005 opinion "is supportive of disability" due to the rest requirements (ECF # 14 at 3), Dr. Ciani explicitly opined otherwise (AR 406 (finding plaintiff capable of full-time work)).  The ALJ reasonably characterized Dr. Ciani's 2005 opinion as "largely unchanged," as compared to the 2004 opinion.  AR 28.

For these reasons, Plaintiff has not shown that Dr. Ciani's opinion is inconsistent with the longitudinal record and treatment notes, and thus has not established that the ALJ erred in characterizing that opinion or in assigning it controlling weight.  See SSR 96-2p, 61 Fed. Reg. 34490-01 (Jul. 2, 1996) (explaining that controlling weight may be given to opinions of treating physicians that are well-supported and not inconsistent with other substantial evidence in the case record).  Furthermore, the ALJ did not err in discounting the State agency consultant's opinion to the extent it was inconsistent with Dr. Ciani's opinion.  See Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998) ("The Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record.").

IV.    The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do.  See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).  In this case, Plaintiff challenges some of the ALJ's findings at step five, contending that

REPORT AND RECOMMENDATION - 12

1   the ALJ erred in finding him capable of performing two semi-skilled jobs without first

2   identifying transferable skills.  AR 29-30.  But the ALJ also identified an unskilled job at step

3   five (AR 30), and this job alone exists in significant numbers in the national and regional

4   economy, which renders any error as to the semi-skilled jobs harmless.  See, e.g., Barker v.

5   Sec'y of Health & Human Servs., 882 F.2d 1474, 1478-79 (9th Cir. 1989) (finding that, even if

6   certain jobs were excluded from consideration, the remaining jobs – 1,266 jobs in the regional

7   area – constituted a significant number).  Because this matter should be remanded for further

8   consideration of plaintiff's mental impairments and credibility, however, the ALJ's step-four and

9   step-five findings may be modified on remand.  Thus, despite plaintiff's failure to identify

10  harmful error in the step-five findings at this stage of the proceeding, because the ALJ should

11  reexamine his step-two and credibility findings on remand, the ALJ should also reconsider

12  whether his findings at the subsequent steps should be modified accordingly.

13

14

15

16                                        CONCLUSION

17          Based on the foregoing discussion, the undersigned recommends the Court find the ALJ

18  improperly concluded plaintiff was not disabled.  Accordingly, the undersigned recommends as

19  well that the Court reverse the ALJ's decision and remand this matter to defendant for further

20  administrative proceedings in accordance with the findings contained herein.

21          Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.")

22  72(b), the parties shall have **fourteen (14) days** from service of this Report and

23  Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6.  Failure to file

24  objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn,

25  474 U.S. 140 (1985).  Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk

26

REPORT AND RECOMMENDATION - 13

is directed set this matter for consideration on **February 28, 2014**, as noted in the caption.

DATED this 10th day of February, 2014.

Karen L. Strombom
United States Magistrate Judge